FILED

February 7, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 10:31 AM



## TENNESSE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| Betty J. Davis, | ) | Docket No.: 2016-01-0531 |
| Employee, | ) | |
| v. | ) | |
| Life Line Screening of America, Ltd., | ) | State File No.: 43283-2016 |
| Employer, | ) | |
| And | ) | |
| Twin City Fire Ins. Co./The Hartford, | ) | Judge Audrey A. Headrick |
| Carrier. | ) | |
| | ) | |

## EXPEDITED HEARING ORDER

This matter came before the Court on January 23, 2017, on a Request for Expedited Hearing filed by Betty Davis. The central legal issue is whether Ms. Davis came forward with sufficient evidence demonstrating that she is likely to prevail at a hearing on the merits that the alleged aggravation of her pre-existing right-knee condition arose primarily out of and in the course and scope of her employment with Life Line. Secondary issues include whether Ms. Davis is entitled to medical benefits and temporary disability benefits. Based on the proof presented at this time, the Court holds Ms. Davis is likely to prevail at a hearing on the merits regarding her entitlement to medical benefits. However, Ms. Davis failed to establish that she is entitled to temporary disability benefits at this time. Accordingly, the Court grants her request for medical benefits but denies her request for temporary disability benefits.

### History of Claim

The parties presented the following facts. Ms. Davis worked for Life Line for over two years as a licensed practical nurse traveling from Chattanooga to other areas in the United States. She stayed in a location for seven weeks, working fifteen to sixteen hours per day, six days per week, performing screenings. Ms. Davis then returned to Chattanooga to have two weeks off. Part of Ms. Davis' duties required her to load and unload the screening equipment as well as break it down. On May 11, 2016, Ms. Davis struck her right knee while unloading the equipment from a van. Ms. Davis testified she

1

had two prior right-knee surgeries "quite a few years ago" and underwent no additional treatment for her knee after recovering from the surgeries.

Ms. Davis' undisputed testimony is that Life Line sent her to Doctors Express on June 10 where she saw Danielle Pelton, Physician's Assistant. She provided a history of a metal ramp hitting her right knee causing her to have pain and swelling. Ms. Davis told PA Pelton of prior right-knee osteoarthritis (OA) as well as a right-knee laparoscopy. However, she stated, "this pain is different than her OA amd [sic] states this exacerbated OA." (Ex. 5.)

PA Pelton examined Ms. Davis and provided an opinion regarding causation. Ms. Davis' physical exam revealed right-knee swelling, limited range of motion, and tenderness. PA Pelton noted that the x-rays showed "objective evidence of severe chronic degenerative knee condition unrelated to employment. This is considered a pre-existing condition for which workers comp. does not apply." *Id.* As a result of this one-time visit, PA Pelton's opinion was that Ms. Davis was "[u]nable to prove with greater than 51% that knee pain is caused from a work related injury due to chronic knee pain." *Id.* Ms. Davis testified that Doctors Express sent her a bill for $310.00 for the June 10 visit, which remains unpaid. (Ex. 4.)

Ms. Davis subsequently selected Dr. Thomas Brown, an orthopedic physician, from a panel. When Ms. Davis saw Dr. Brown for the first time, he took x-rays of her right knee and recommended a right-knee replacement. Ms. Davis told him that she had pain prior to the May 11 injury but her knee "was not bothering her before the accident." (Ex. 2.) She showed him pictures of her right knee on her cell phone taken after the accident, which revealed bruising that had since resolved. Dr. Brown suspected the accident aggravated an underlying condition.

After Ms. Davis' initial visit with Dr. Brown, Life Line's insurance adjuster sent him correspondence with the Doctors Express office visit attached. In response to the adjuster's questions, Dr. Brown diagnosed Ms. Davis with a contusion with osteoarthritis of the right knee. He recommended a total right-knee replacement. Dr. Brown also checked "no" in response to whether Ms. Davis' condition and the need for treatment arose primarily out of the course and scope of her May 11, 2016 accident. Next to the checkmark, he wrote "chronic condition." (Ex. 3.)

Although Ms. Davis continued to treat with Dr. Brown, the record is silent regarding when Life Line denied her claim. However, Dr. Brown's next office visit suggests that Life Line denied her claim after the first visit because it states Ms. Davis was unable to pay the out-of-pocket cost for a right-knee replacement using her private health insurance. Dr. Brown injected Ms. Davis' knee and sent her to physical therapy, which Life Line did not approve. Regarding Dr. Brown's diagnoses, he stated Ms. Davis had advanced osteoarthritis and a "probable torn lateral meniscus." Dr. Brown last saw

2

Ms. Davis in August 2016. Ms. Davis testified that Dr. Brown sent her a bill for an August 17 visit, which remains unpaid. (Ex. 4.)

Dr. Brown signed a Causation Statement prepared and submitted on behalf of Ms. Davis. In the statement, Dr. Brown found the May 11 injury aggravated her pre-existing osteoarthritis. It was also Dr. Brown's opinion "that this aggravation of her pre-existing condition is primarily the cause of the need for a surgical procedure on her right knee to either repair if possible and/or a right knee replacement." (Ex. 3.)

The parties deposed Dr. Brown to address causation and his recommendation of a total knee replacement. Dr. Brown agreed that the ramp hitting Ms. Davis' right knee "in and of itself" would not be cause for a total knee replacement. (Ex. 2 at 16.) Dr. Brown stated that, regardless of the injury, Ms. Davis would still need a knee replacement. *Id.* He made clear that Ms. Davis' underlying osteoarthritis as well as a probable lateral meniscus tear is the reason she would ultimately need a knee replacement in the future. *Id.* at 16-17. Dr. Brown was unable to determine if the accident caused anatomical change in Ms. Davis' knee. *Id.* at 9. He stated it is possible that the lift gate hitting Ms. Davis' knee caused the meniscus tear, but that type of injury usually causes contusions and hematomas that resolve. *Id.* at 18. However, Dr. Brown stated his opinion that the May 11 injury aggravated her pre-existing osteoarthritis and accelerated the need for the knee replacement surgery. *Id.* at 17, 20. Further, in addressing the seemingly conflicting opinions that he provided prior to his deposition, Dr. Brown explained: "But what I'm trying to say is that she's aggravated an underlying condition." *Id.* at 15.

During the time Dr. Brown saw Ms. Davis, he did not provide her with any work restrictions or take her off work. There are only brief references in Dr. Brown's records regarding Ms. Davis' ability to work. On August 17, Ms. Davis told him "that she has not worked in two months." *Id.* at Ex. 1. Approximately two months later, Ms. Davis called Dr. Brown and told him she was "unable to return to work until she has a knee replacement." *Id.* Dr. Brown noted he could "certainly understand this because her x-rays show severe valgus osteoarthritis of her knee, which would make it very difficult for her to be on her feet all day long." *Id.* During his deposition, Dr. Brown was asked, "Would you have [Ms. Davis] standing on her leg for 15 hours a day; is that possible?" *Id.* at 19-20. Dr. Brown replied, "No. It's probably not possible with that worn-out knee." *Id.* at 20. At the hearing, Ms. Davis testified she has not worked since her injury on May 28, and she does not know if she is still an employee of Life Line. Although Ms. Davis stated Life Line never called her back to work, she further stated there is no way she could return to work and stand on her leg due to swelling.

Ms. Davis seeks medical benefits and temporary disability benefits for her right-knee condition. She relied upon the medical opinion of Dr. Brown, the panel physician. Ms. Davis also cited *Miller v. Lowe's Home Ctrs., Inc.,* 2015 TN Wrk. Comp. App. Bd. LEXIS 40 (Oct. 21, 2015), and argued that her case is almost identical. Life Line

3

additionally relied upon the medical opinion of Dr. Brown and argued Ms. Davis did not meet her burden of proof in establishing that she sustained a compensable injury. It further argued that Ms. Davis' case is distinguishable from the facts in *Miller, supra.* Therefore, Life Line requested that the Court deny Ms. Davis' request for benefits.

## Findings of Fact and Conclusions of Law

### *General Legal Principles*

Ms. Davis bears the burden of proof on all essential elements of her workers' compensation claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). However, she is not required to prove every element of her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Rather, at an expedited hearing, Ms. Davis must come forward with sufficient evidence from which this Court might determine that she is likely to prevail at a hearing on the merits. *Id.*

The following general principles govern adjudication of this proceeding. In order for an injury to be compensable, it must be accidental. Under the Tennessee Workers' Compensation Law, an injury is accidental "only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Ms. Davis must show, to a reasonable degree of medical certainty, that the incident "contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Likewise, an aggravation of a pre-existing condition is compensable only if "it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Further, as the panel physician, Dr. Brown's opinion regarding causation "shall be presumed correct but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(14) (2016).

### *Medical Benefits*

With these legal principles in mind, the Court first considers whether Ms. Davis satisfied the necessary requirements to qualify for medical benefits. The Workers' Compensation Appeals Board provided direction regarding the requirements an employee with pre-existing conditions must satisfy in order to qualify for medical benefits at an interlocutory hearing:

> [A]n injured worker who alleges an aggravation of a pre-existing condition must offer evidence that the aggravation arose primarily out of and in the course and scope of employment. *See* Tenn. Code Ann. § 50-6-102(13)(A)

(2014). Moreover, the employee must come forward with sufficient evidence from which the trial court can determine that the employee would likely establish, to a reasonable degree of medical certainty, that the work accident contributed more than fifty percent in causing the aggravation, considering all causes. *See* Tenn. Code Ann. § 50-6-102(13)(B)-(C). Finally, an aggravation or exacerbation need not be permanent for an injured worker to qualify for medical treatment reasonably necessitated by the aggravation.

*Miller*, at *18.[1]

Here, Dr. Brown attributed the need for Ms. Davis' right-knee replacement to the May 11, 2016, accident. Although Ms. Davis would need a right-knee replacement at some undetermined time in the future, Dr. Brown testified that the May 11 injury aggravated her pre-existing osteoarthritis and accelerated the need for the knee replacement surgery. (Ex. 2 at 17, 20.) Additionally, it is undisputed that Ms. Davis worked full-time for over two years prior to her injury on May 11, 2016, without needing any medical treatment for her right-knee osteoarthritis. Therefore, the Court grants Ms. Davis' request for payment of past medical expenses as well as additional medical treatment with Dr. Brown, including the total right-knee replacement surgery.

Accordingly, for the foregoing reasons, the Court concludes that Ms. Davis provided sufficient evidence of her entitlement to medical benefits and satisfied her burden at this interlocutory stage.

*Temporary Disability Benefits*

Next, the Court will address whether Ms. Davis is entitled to temporary disability benefits. In order to be entitled to temporary total disability benefits, Ms. Davis "must prove that she was (1) totally disabled to work by a compensable injury; (2) that there is a causal connection between the injury and [her] inability to work; and (3) the duration of that period of disability." *James v. Landair Transp., Inc.*, 2015 TN Wrk. Comp. App. Bd. LEXIS 28, at *16 (Aug. 26, 2015) (quoting *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978)). "Temporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Jewell v. Cobble Constr. & Arcus Restoration*, 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *22 (Jan. 12, 2015) (quoting *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005)).

---

[1] After the release of *Miller*, the statutory provisions the Appeals Board cited were recodified.

As previously indicated, Dr. Brown's office notes are silent regarding Ms. Davis' work status aside from his documentation of her comments that she was unable to work. In response to a question during cross-examination as to whether Dr. Brown would "have [Ms. Davis] standing on her leg for 15 hours a day," Dr. Brown responded, "No. It's probably not possible with that worn-out knee." (Ex. 2 at 20.) Additionally, Dr. Brown's medical records do not indicate that any work restrictions were in place during the time he treated Ms. Davis. The Court holds this testimony is not sufficient to satisfy the requirements set forth in *James, supra*. Therefore, the Court finds Ms. Davis failed to come forward with sufficient evidence demonstrating that she is likely to prevail at a hearing on the merits that she is entitled to temporary total or temporary partial disability benefits at this time.

In conclusion, the Court holds Ms. Davis is likely to prevail at a hearing on the merits in proving that she sustained an aggravation of her pre-existing right-knee condition that arose primarily out of and in the course and scope of her employment with Life Line. Additionally, the Court holds she is entitled to ongoing medical treatment with Dr. Brown. However, due to her lack of sufficient medical proof, Ms. Davis is unlikely to prevail at a hearing on the merits in establishing entitlement to temporary disability benefits at this time. Therefore, the Court grants her request for medical benefits but denies her request for temporary disability benefits at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Life Line or its workers' compensation carrier shall authorize Ms. Davis to continue treating with Dr. Brown and, if he still deems it appropriate, authorize a total right-knee replacement for treatment of her May 11, 2016 injury. Ms. Davis or the providers shall furnish Life Line, or its carrier, bills for the charges incurred for compensable care, and Life Line or its carrier shall timely pay said charges.

2. Upon presentment of bills by Ms. Davis or her treating providers, Life Line or its carrier shall timely pay the charges for past treatment of Ms. Davis' work-related right-knee injury by Doctors Express and Dr. Brown per the Tennessee Medical Fee Schedule.

3. Ms. Davis' request for temporary disability benefits is denied at this time.

4. This matter is set for a Status Hearing on **March 28, 2017**, at **10:00 a.m.** Eastern Time. You must call (423) 634-0164 or toll-free at (855) 383-0001 to participate in the Status Hearing. You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.

6

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

6. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 7th day of February, 2017.**

Judge Audrey A. Headrick
**Court of Workers' Compensation Claims**

# APPENDIX

Exhibits:
1. Affidavit of Betty Davis
2. Deposition of Dr. Thomas W. Brown, III
3. Causation responses of Dr. Brown
4. Medical bills of AFC Urgent Care and Dr. Brown
5. Office note of Doctors Express

Technical record:[2]
1. Petition for Benefit Determination
2. Dispute Certification Notice, including additional defenses
3. Request for Expedited Hearing
4. Motion for Discovery Prior to Expedited Hearing
5. Employer's Response to Employee's Request for Expedited Hearing
6. Order Granting Motion for Discovery Prior to Expedited Hearing
7. Docketing Notice for Review of the File Determination
8. Amended Request for Expedited Hearing
9. Notice of Expedited Hearing

---

[2] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 7th day of February, 2017.

| Name | Certified Mail | Via Email | Email Address |
|------|---------------|-----------|---------------|
| Michael Wagner, Attorney | | X | maw@wagnerinjury.com |
| Blair Cannon, Attorney | | X | l.blair.cannon@thehartford.com |

_____

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov